UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TERRELL B. AND LINDA ROBINSON                    CIVIL ACTION

VERSUS                                           NO. 04-3225

APACHE CORPORATION                               SECTION "N" (3)

ORDER AND REASONS

Before the Court is the "Motion for Summary Judgment" filed by the defendant,

Apache Corporation ("Apache"). The plaintiffs, Terrell and Linda Robinson, have filed an

opposition to Apache's motion. For the reasons that follow, the "Motion for Summary Judgment"

is **DENIED**.

I. BACKGROUND

For the past several years, plaintiff Terrell Robinson has worked as a mechanic on

the Gulf of Mexico "oil patch." In June of 2002, Mr. Robinson began working for Hanover, a

company that was in the business of contracting out mechanical personnel to various oil companies.

In 2003, certain Hanover employees formed their own company, Blue-Stream Services, L.L.C.

("Blue-Stream"), which conducted similar operations to those of Hanover. At that time, a number

of Hanover employees, including Mr. Robinson, left Hanover to join Blue-Stream. Throughout Mr.

Robinson's employment with both Hanover and Blue-Stream, he was assigned to work solely on

Apache's facilities.

On April 30, 2004, while working on what is believed to be West Delta 41B, a

platform owned, operated and controlled by Apache in the Gulf of Mexico, Mr. Robinson was

injured when he attempted to manhandle a compressor cylinder head.  Specifically, he suffered a

ruptured cervical disk, which required him to undergo a corpectomy and implantation of hardware

in his spine, and other personal injuries.  Subsequently, Mr. Robinson and his wife filed suit in this

Court to recover for his injuries.  Mr. Robinson seeks damages for medical expenses, pain and

suffering, mental anguish, disability, humiliation and embarrassment, wage loss and lost earnings

capacity.  Mrs. Robinson seeks damages for loss of consortium and services.

On November 15, 2005, Apache filed the "Motion for Summary Judgment" presently

before the Court.  In its motion, Apache invokes the "borrowed servant" doctrine and asserts that,

although Mr. Robinson was the nominal employee of Blue-Stream at the time of his accident, he was

in fact working for Apache.  Apache further argues that, because workers' compensation is the

exclusive remedy of an injured worker against his employer under the Longshore and Harbor

Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 902, *et seq*., Mr. Robinson may not recover

for his injuries from Apache in tort.  In response, plaintiffs assert that, at a minimum, material issues

of fact exist on the issue of whether Mr. Robinson was the borrowed servant of Apache, which

issues of fact should preclude the Court from ordering summary judgment in this matter.

## II.  LAW AND ANALYSIS

A.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  *See also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Before granting a motion for summary

judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"); *McCarty v. Vastar Res., Inc.*, No. 01-CV-2206, 2002 WL 1837918, at *2 (E.D. La. Aug. 8, 2002).  The burden is upon the moving party, in this case Apache, to establish that no genuine issues of material fact exist.  *United States Fire Ins. Co. v. Miller*, 381 F.3d 385, 387 (5th Cir. 2004).  If the movant meets his burden, then the burden shifts to the nonmovant, who must show that a genuine issue of material fact does exist.  *Celotex*, 477 U.S. at 324.  In doing so, the non-moving party may not merely rest upon the pleadings, but must point to specific facts that support his position.  *Id*. at 325.  *See also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party.  *United States Fire Ins. Co.*, 381 F.3d at 387-388.

B.  Borrowed Employee Doctrine in LHWCA Context

The Supreme Court recognized the concept of the "borrowed employee" in the 1909 case of *Standard Oil v. Anderson*, wherein it stated:  "One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relationship."  212 U.S. 215, 220 (1909).  *See also Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977) (quoting *Standard Oil*, 212 U.S. at 220).  Although the issue in *Standard Oil* was whether an employer is liable for the negligence of an employee that

-3-

he "borrowed," the "borrowed servant" doctrine  has been applied in contexts other than respondeat superior, including the LHWCA, since its inception.  *See e.g.*, *Lackey v. Atlantic Richfield Co*., 990 F.2d 202, 207-208 (5th Cir. 1993) (applying the "borrowed servant" doctrine in the context of a Jones Act claim); *Gaudet*, 562 F.2d at 355 (applying the "borrowed servant doctrine in the context of an LHWCA claim).

The LHWCA provides that an injured employee's exclusive remedy against his employer is workers' compensation.  *See* 33 U.S.C. §§ 904(a), 905(a).  Under the "borrowed employee" doctrine, the tort immunity provided to employers by the LHWCA has also been afforded to "borrowing" employers.  *See Total Marine Serv. Inc. v. Director, Office of Workers' Compensation Programs*, 87 F.3d 774, 777 (5th Cir. 1996) (citing *Hebron v. Union Oil Co.*, 634 F.2d 245 (5th Cir. 1981)); *Gaudet*, 562 F.2d at 355; *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243-44 (5th Cir. 1988). Because the instant dispute is subject to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333,[1] Mr. Robinson's right to compensation is governed by the LHWCA.[2]  Therefore, whether he was a borrowed employee of Apache at the time of his accident may be determinative of the amount of recovery to which he is entitled from Apache.  Because the issue of borrowed employee status is a matter of law, this Court may grant summary judgment on such issue if it finds that sufficient basic factual ingredients are not disputed.  *See Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d, 615-17 (5th Cir. 1986).

---

[1]The parties do not dispute that the OCSLA is applicable in this case, as Mr. Robinson was injured on a platform that is located on the Outer Continental Shelf, off the coast of Louisiana.

[2]The OCSLA provides that the LHWCA regulates the right to compensation of an injured platform worker.  *See*  43 U.S.C. § 1333(b).

In determining whether Mr. Robinson was the borrowed employee of Apache, the Court must consider the following nine factors, espoused by the Fifth Circuit in *Ruiz v. Shell Oil Co.*: (1) who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work is being performed by the employee; (3) whether an agreement, understanding, or meeting of the minds exists between the nominal and the borrowing employer; (4) whether the employee acquiesced in the new work situation; (5) whether the original employer terminated his relationship with the employee; (6) who furnished the employee's tools and place of performance; (7) whether the employee's new employment was over a considerable length of time; (8) whether the nominal or the borrowing employer had the right to discharge the employee; and (9) whether the nominal or the borrowing employer had the obligation to pay the employee. 413 F.2d 310, 312-13 (5th Cir. 1969). The Fifth Circuit has noted on numerous occasions that no one factor or combination of factors is determinative. *See e.g. United States Fire Ins. Co.*, 381 F.3d at 388; *Lemaire v. Danos & Curole Marine Contractors*, 266 F.3d 1059 (5th Cir. 2001); *Brown v. Union Oil Co.*, 984 F.2d 674, 676 (5th Cir. 1993). However, in *Gaudet*, the court found that, when the issue of whether one is a borrowed employee arises in the context of the LHWCA, the focus should be on factors 4, 5, 6 and 7. *See Gaudet*, 562 F.2d at 357.

C.  Analysis

In analyzing the first factor, who had control over Mr. Robinson and his work, the Court must distinguish "'between authoritative direction and control, and mere suggestion as to the details or the necessary cooperation'." *Ruiz*, 413 F.2d at 313 (quoting *Standard Oil Co.*, 212 U.S. at 222). As an initial matter, the Court notes that, generally, Mr. Robinson was not given instruction with respect to the details of his work, as he was a specialist in his field. He did, however, work

under the general command of a Blue-Stream supervisor and an Apache supervisor.  It is unclear from the record exactly how much contact plaintiff had with each of his supervisors.  Both supervisors worked at onshore locations.  Plaintiff's Apache supervisor, Robert Shelton, would, however, make occasional visits to the different Apache platforms.  Plaintiff testified that while he would speak to Mr. Shelton during such visits, he would go to Clint Breaux, his Blue-Stream supervisor, with any work-related concerns.  Although plaintiff stated that he contacted Mr. Breaux on a daily basis, Mr. Breaux testified that Mr. Robinson would contact him about three to four times a week.  Mr. Breaux also testified that plaintiff very seldom had reason to contact Mr. Shelton.  Mr. Shelton, on the other hand, testified that he had direct contact with Mr. Robinson numerous times.  He approximated that he and plaintiff had 35 work-related interchanges during the time that plaintiff worked for Blue-Stream.

From the record, it appears that, aside from the control that plaintiff's supervisors asserted over him, both Blue-Stream and Apache asserted some authority over the conditions of plaintiff's work.  Plaintiff was subject, throughout his employment with Blue-Stream, to the Blue-Stream employee handbook, under which he was bound to follow Blue-Stream policies.  Also, he received his paycheck from Blue-Stream.  On the other hand, plaintiff's seven-days-on/seven-days-off schedule was set by Apache.  Additionally, Apache had significant input as to bonuses, raises or promotions that Mr. Robinson, as well as other Blue-Stream employees, would receive.  Moreover, as discussed below, Apache provided plaintiff with transportation to and from the platforms, lodging and meals.  Further, Apache required plaintiff to attend safety meetings, which meetings were conducted by contract employees.  Finally, Apache had a say with respect to which Blue-Stream employees would be allowed to work on its platforms and what jobs such employees

would perform on its platforms.  Significantly, Steven Mark Sargent, owner and manager of Blue-Stream, testified that Blue-Stream generally does not hire an employee without Apache interviewing that employee first.  Only occasionally, if Apache disapproves of an interviewee, will Blue-Stream consider that person for a position not affiliated with Apache.  Moreover, if Apache decides that the arrangement with respect to a particular Blue-Stream employee is not working out well, Apache has the authority to terminate its relationship with that employee.  Because it is not clear to the Court exactly how much authority was asserted over plaintiff by each of his supervisors, and because there is evidence in the record indicating that both Blue-Stream and Apache had a measure of control over plaintiff, the Court finds that a material issue of fact exists as to the first factor.

As to the second factor, the Court finds that Mr. Robinson was clearly performing the work of Apache.  It is undisputed that, as a mechanic, plaintiff repaired and maintained the production equipment and platforms in Apache's West Delta field.  From the time that plaintiff began to work for Hanover in 2002 until his injury in 2004, he worked only on Apache facilities.  There can be no doubt that the repairs performed by plaintiff were for the benefit of Apache and the furtherance of its business.  Plaintiffs assert that there is a dispute between the parties as to whose work Mr. Robinson performed and that only arguably was he performing Apache's work.  In support of their position, they argue that Blue-Stream is unlike many other companies that contract out their workers in that Blue-Stream, as opposed to merely providing laborers, provides complete specialized mechanical services to the oil production industry.  Therefore, plaintiffs assert, Mr. Robinson  was performing Blue-Stream's own work in providing services to Apache.  The Court finds plaintiffs' argument in this regard to be unconvincing.  As stated by the Fifth Circuit in *Lemaire*, "plaintiff[s'] assertion embodies the nature of the 'borrowed employee'."  *See Lemaire*, 265 F.3d at 1059.

Third, the Court must consider whether there was an agreement, understanding or meeting of the minds between the original and borrowing employer. *Ruiz*, 413 F.2d at 312-13. In the instant case, there was a "master service contract" between the original and borrowing employer. Included in this contract are the following provisions:

> **INDEPENDENT CONTRACTOR**. Contractor [(Blue-Stream)] shall be and perform at all times as an independent contractor and neither Contractor nor any Contractor Personnel shall be deemed to be subject to the control or direction of Company [(Apache)] as to the details of the Work, Company being interested only in the compliance of the Work with the job order. Company shall be entitled to make such inspections as may be necessary in furtherance of its interests and to determine that the Work is being performed in accordance with the job order.

> **MODIFICATION OF CONTRACT.** No change, modification, extension, renewal, ratification, waiver or recision of this Contract or of any of the provisions hereof shall be binding unless it is in writing and signed by both parties.

Admittedly, these provisions purport to preclude "borrowed employee" status with respect to workers like Mr. Robinson. The language of these provisions is not determinative, however. As stated by the Fifth Circuit in *Melancon*, "obviously parties to a contract cannot automatically prevent a legal status like 'borrowed employee' status from arising merely by saying in a provision in their contract that it cannot arise." *Melancon*, 834 F.2d at 1245. Therefore, in assessing the third factor, the Court must also consider, in addition to the contract terms, the reality at the worksite, as the parties' actions in carrying out the contract can impliedly modify, alter, or waive express contract provisions. *Id.* (citing *McDonough Marine Services, Inc. v. M/V ROYAL STREET*, 465 F. Supp. 928, 935 (E.D. La. 1979) and *Stauffer Chem. Co. v. W.D. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967)). In *Melancon*, the Fifth Circuit considered similar contractual provisions to the one above and found that a sufficient understanding existed between the nominal and

borrowing employer to satisfy the third factor because the nominal employer clearly understood that the plaintiff employee would be taking his instructions from the borrowing employer, notwithstanding the contractual provisions at issue. *Id*. at 1245. As discussed above, the Rule 56 evidence *sub judice* conflicts as to who had authoritative direction and control over plaintiff. Therefore, the Court finds that there is a genuine issue of fact as to whether Apache's authority over plaintiff was altered by the reality at the work site.

As for the fourth factor considered under *Ruiz*, the Court finds that Mr. Robinson clearly acquiesced in his new work situation. The fourth factor focuses on whether the employee was aware of his working conditions and chose to continue working in such conditions. *Brown*, 984 F.2d 678; *McCarty*, 2002 WL 1837918 at *4. Mr. Robinson worked solely on Apache property from June of 2002, when he began working for Hanover, until his accident occurred in April of 2004. Having performed work solely for Apache while under the employment of Hanover, Mr. Robinson undoubtedly was aware of and able to evaluate the conditions in which he would be working at the time his employment began with Blue-Stream and, more importantly, at the time that he began the assignment during which he was injured. There is no indication in the record that Mr. Robinson ever made any complaint or other objection regarding these conditions to either Blue-Stream or Apache. *See Melancon*, 834 F.2d at 1246 (finding the fact that the plaintiff did not complain about his working conditions to either his nominal employer or his alleged borrowing employer to be significant).

With respect to the fourth factor, plaintiffs argue that "the facts in this case raise a serious question as to whether there was a 'new work situation' at all." Plaintiffs' argument is misguided, as they inappropriately place emphasis on the word "new." It is of no moment whether

Mr. Robinson was engaged in a new work situation when he was injured.  Rather, of significance

to the Court is with whether he acquiesced in his work situation.  To that end, the fact that Mr.

Robinson had been employed on Apache platforms for almost two years and that his work situation

was not a new one at the time he was injured lends support to the conclusion that he did indeed

acquiesce in his work situation, as he was afforded a significant amount of time to assess the risks

posed by his working conditions.  This conclusion is supported by the Fifth Circuit's finding in

*Melancon*, wherein the court concluded that the plaintiff, who had been working almost *exclusively*

*on platforms of the alleged borrowing employer* for approximately 5 years prior to his accident,

acquiesced in his work situation.  *Melancon*, 834 F.2d at 1246.[3]

Under the fifth factor, the Court must determine whether Blue-Stream, Mr.

Robinson's original employer, terminated its relationship with Mr. Robinson.  *See Ruiz v. Shell Oil*

*Co.*, 413 F.2d at 312-13.  The Court's emphasis in analyzing this factor should be on the lending

employer's relationship with the employee during the period of the alleged borrowing.  *Capps*, 784

F.2d at 617-18; *McCarty*, 2002 WL 1837918 at *5.  To conclude that Blue-Stream terminated its

relationship with Mr. Robinson, however, the Court need not find that all ties were completely

severed between the two parties.  The Fifth Circuit has recognized that such a requirement would

effectively eliminate the borrowed employee doctrine.  *See Melancon*, 834 F.2d at 1238; *Capps*, 784

F.2d at 617-618.  The record shows that Mr. Robinson and Blue-Stream did maintain at least a

---

[3]Significantly, both this Court and the Fifth Circuit have also found the fifth factor met in
cases in which the employee was working only weeks or months for the alleged borrowing
employer before he injured himself.  *See e.g.*, *Brown*, 984 F.2d at 678 (finding that the employee,
who worked for the alleged borrowing employer for one month, was afforded sufficient time to
appreciate his new work conditions prior to his accident); *Cobb v. SIPCO Servs. & Marine, Inc.*,
1997 WL 159491, at *4 (E.D. La. 1997) (finding that plaintiff had acquiesced in his new work
situation after two months of employment).

minimal relationship during Mr. Robinson's assignment with Apache. First, plaintiff was bound by

Blue-Stream's employee handbook at the time of his accident and throughout the whole of his

employment with Blue-Stream, which contained certain forms that the plaintiff was to fill out in

various situations.[4]   Additionally, plaintiff submitted time tickets, based on the work that he

performed for Apache, to Blue-Stream and would receive his paychecks from Blue-Stream. Finally,

as noted previously, the record shows that Mr. Robinson would converse with Clint Breaux, his

Blue-Stream supervisor, on occasion with respect to his work. The Court notes that the record

contains conflicting information with respect to the amount of contact that plaintiff had with Mr.

Breaux. As stated above, while plaintiff testified that he spoke to Mr. Breaux daily, Mr. Breaux

testified that plaintiff contacted him three to four times a week. Generally, the Fifth Circuit has

found a termination of the nominal employer/employee relationship in situations where the

employee has had virtually no contact with his nominal employer during his employment assignment

with the alleged borrowing employer.[5]   Therefore, regardless of whether Mr. Robinson contacted

Mr. Breaux on a daily basis or only a few times a week, the Court finds that factor five weighs, even

if only slightly, against a finding of borrowed employee.

　　　　Sixth, the Court must consider who furnished Mr. Robinson with tools and the place

---

[4]For example, plaintiff had to fill out and turn in to Blue-Stream the "Vacation Request
Form" if he wanted to take a vacation and the "Violation Report Form" if he witnessed a Blue-
Stream employee violating company policies.

[5]*See e.g., United States Fire Ins. Co.*, 381 F.3d at 390 (stating that "[a]lthough Seacor
issued his checks, Dyson appears to have had no contact with Seacor whatsoever" and that the
fifth factor, therefore, "must be considered in favor of borrowed employee status"); *Lemaire*, 265
F.3d at 1029 (finding that because "LeMaire's contact with Steen was limited to reporting his
hours to Steen...factor five (5) weighs in favor of borrowed employee status"); *Melancon*, 834
F.2d at 1246 (finding that the fifth factor weighed in favor of borrowed employee status where
the nominal employer's control over the employee "was nominal at most").

where he performed his work.  *See Ruiz*, 413 F.2d at 312-13.  It is undisputed that Apache provided the plaintiff's place of performance, as plaintiff performed all of his work on Apache's platforms. Additionally, it is uncontested that Apache provided plaintiff with his meals, lodging and transportation to and from Apache platforms.  With respect to who furnished plaintiff with his tools, however, the record is unclear.  In his deposition testimony, Robert Shelton of Apache stated that Apache provides the tools that the "seven and seven" mechanics, like plaintiff, use to do their work in the field.  Mr. Robinson stated in his deposition that he used "standard tool bags" to perform his work and that some of the tools he worked with came from Blue-Stream, while others had been left for his use by previous mechanics.  Mr. Sargent testified that Blue-Stream mechanics used a myriad of tools that, depending on the specific job, could be supplied by Apache, Blue-Stream or the mechanics themselves.  He did not know, however, who specifically supplied the tools available to plaintiff on the West Delta 104 platform, the platform on which plaintiff was stationed when offshore.  In light of the foregoing, an issue of fact exists as to who provided plaintiff with the majority of his tools.  Nevertheless, the Court concludes that factor six is neutral, at the least, and does not weigh against a finding of borrowed employee status, regardless of who provided plaintiff with his tools, due to the fact that Apache otherwise provided plaintiff with much material support in the performance of his job.

As to the seventh factor, the Court finds that plaintiff's "new" employment was over a considerable length of time.  As set forth above, Mr. Robinson worked exclusively on Apache platforms for almost a two-year period, both while he was employed with Hanover and, subsequently, with Blue-Stream.  With respect to the seventh factor, plaintiffs assert that while Mr. Robinson agrees that he worked in an Apache field just short of two years, he disputes that his

-12-

employment was "new" in any sense.  Again, plaintiffs inappropriately emphasize the word "new."

Of significance to the Court in assessing this factor is the length of time that Mr. Robinson worked

in the conditions that he was under at the time of his accident.  Plaintiffs' argument is therefore

without merit, and the seventh factor supports a finding of borrowed employee status.

        Both the eight and ninth factors also weigh in favor of a finding of borrowed

employee status.  Although Apache did not have a right to terminate Mr. Robinson's employment

with Blue-Stream, it did have authority to dismiss plaintiff from its own workplace.  Under provision

8 of the Master Service Contract between Blue-Stream and Apache, Apache had the "right to deny

access to its property or facilities to any [Blue-Stream] Personnel."  Additionally, both Shelton and

Sargent testified that when Apache expressed dissatisfaction with a Blue-Stream employee, Blue-

Stream would reassign the mechanic to another location of the company or lay him off.  Similarly,

Apache did not itself pay plaintiff–Blue-Stream did.  However, plaintiff's Blue-Stream paycheck

was based on the time tickets that he turned in to Blue-Stream, which  reflected the amount of time

that he performed work for Apache.  The Fifth Circuit has stated on numerous occasions that such

discharge and payment arrangements support borrowed employee status.  *See e.g.*, *Brown*, 984 F.2d

at 679; *Melancon*, 834 F.2d at 1246; *Capps*, 784 F.2d at 618; *Billizon*, 993 F.2d 105-106.

        As set forth above, the Court finds that all factors, except for the first, third and fifth

factors, favor borrowed employee status.  The fifth factor does not support a finding of borrowed

employee status.  As for the first and third factors, the Court finds that genuine issues of fact exist,

which must be left to the jury's determination.  Accordingly, despite the apparent strength of

defendant's position, the Court finds that entering a summary judgment is not appropriate at this

stage of the proceedings.

### III.  CONCLUSION

In light of the Court's foregoing analysis, it is **HEREBY ORDERED** that defendant Apache's "Motion for Summary" judgment is **DENIED**.  The Court notes that its ruling is not determinative of the issue of whether Mr. Robinson was indeed a borrowed employee of Apache.  Rather, the Court holds only that genuine issues of material fact sufficiently exist which preclude the granting of summary judgment.

New Orleans, Louisiana, this ___8th___ day of March, 2006.

_____
**Kurt D. Engelhardt**
**United States District Judge**